**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DARRYL K. WISE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> C. HENDERSON, *CO II*, ) <br> JOHN DOE, *Warden*, and ) <br> JOHN DOE, *Chief of Security*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 21-cv-828-LKG <br><br> Dated: March 4, 2022 |

**MEMORANDUM OPINION AND ORDER**

Self-represented Plaintiff Darryl K. Wise, an inmate presently incarcerated at Maryland Correctional Institution – Hagerstown, filed the above-captioned 42 U.S.C. § 1983 civil rights action against Charles Henderson, a correctional officer at Roxbury Correctional Institution ("RCI"), as well as the Warden and Chief of Security at RCI. *See generally* Compl., ECF No. 1. Wise alleges that CO II Henderson failed to protect him from being assaulted while he was housed at RCI, and that all three Defendants failed to adequately respond to the incident. *Id.* at 2-3. He seeks compensatory and punitive damages. *Id.* at 4.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 11, which Wise opposes, ECF No. 20. This Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Defendants' Motion, construed as one for summary judgment, shall be granted.

**Background**

Wise states that on November 1, 2019, he was watching television in the recreation hall at RCI when he was "brutally and violently stabbed" in the neck and head by another inmate. Compl. at 2. Wise alleges that at the time of the attack, CO II Henderson was not at "his designated post within or near the recreation hall or the control center to observe, circumvent, or prohibit the violent assault." *Id.* at 3. Moreover, Wise asserts that there were "unreasonable staffing shortages at RCI," leading to a lack of "proper security, safety and protection." *Id.*

Wise claims that following the attack, CO II Henderson failed to render "any emergency alert or needed first-aid" to his stab wounds. *Id.* He also claims that CO II Henderson, the Chief of Security, and the Warden at RCI were negligent in failing to respond to the assault, or to prevent his injuries, which necessitated five sutures and four staples to his head. *Id.* Wise avers that as a result of his injuries, he continues to suffer from headaches, neck pain, insomnia, inability to concentrate, anxiety attacks, emotional distress, mental anguish, and post-traumatic stress disorder, for which he takes numerous prescribed medications. *Id.*

On November 12, 2019, Wise submitted a request for administrative remedy ("ARP"), alleging that RCI staff failed to protect him. ARP, ECF No. 1-1. On December 20, 2019, the Warden dismissed the ARP after investigating the matter and finding that there was an officer on the tier during the incident, and that Wise was taken directly to the medical unit where he was evaluated and treated. *Id.* According to the Department of Public Safety & Correctional Services' Intelligence & Investigative Division ("IID"), there were no witnesses, no suspect, and no video available. Incident Report, ECF No. 11-2 at 4; *see also* Medical Records, ECF No. 11-3 at 25 ("Patient reporting he does not know who stabbed him.").

Wise subsequently appealed the ARP dismissal to the Commissioner of Corrections, who affirmed the decision on January 22, 2020. Appeal, ECF No. 11-3 at 31. By letter dated February 13, 2020, Wise filed a grievance with the Inmate Grievance Office ("IGO"). *See id.* at 9.

On March 2, 2020, Wise filed a statement regarding the assault and indicated his intent to pursue criminal charges against his assailant. Inmate Statement, ECF No. 11-2 at 22. Having not received any response, Wise asked for an update by letter dated March 27, 2020. *Id.* at 23.

On May 6, 2020, IID reopened the investigation. *Id.* at 5. During an interview on May 11, 2020, Wise identified two inmates as his assailants and claimed that CO II Henderson allowed one of those individuals into the recreation hall on the day of the incident. *Id.* at 6. IID interviewed both suspects and discovered that neither had been previously charged with assault or any rule violations during the time frame in question. *Id.* IID also spoke to CO II Henderson, who stated that he did not witness the incident. *Id.* On May 20, 2020, the Washington County State's Attorney reviewed the case and declined to prosecute it, given that there was no video of the incident, no witnesses came forward, and several months had elapsed. *Id.*

On September 3, 2020, the IGO referred Wise's grievance to the Office of Administrative Hearings, which conducted a contested evidentiary hearing on December 10, 2020. *See* ECF No. 11-3 at 8-9. During the proceeding, Wise testified that at the time of the incident, approximately 96 inmates were in the recreation hall. *Id.* at 10. He stated that he was quickly stabbed by two inmates, and that no disturbance preceded the attack. *Id.* at 9. Wise also acknowledged that officers were patrolling the recreation hall, standing on the tier near the shower area and observing. *Id.* at 12. An inmate who testified on Wise's behalf stated that the attack "was not drawn out and happened in a matter of seconds." *Id.*

During the hearing, CO II Henderson stated that on the day in question, he was assigned to housing unit #4, Tier D. *Id.* at 10. CO II Henderson explained that officers stationed on the tier do not actually stand in the recreation hall but can see the inside of the recreation hall from the front of the tier. *Id.* At approximately 1:45 p.m., CO II Henderson observed lock-in of the tier as inmates moved from the recreation hall to their respective tiers. *Id.* A few minutes later, he saw Wise walking towards him, with blood on his body. *Id.* CO II Henderson "immediately called for the medical cart and [Wise] was transported to the medical dispensary for treatment" by 1:52 p.m. *Id.*; *see also* Medical Records, ECF No. 11-3 at 27.

Prior to the incident on November 1, 2019, the two inmates identified by Wise as his assailants were not listed as his known enemies. *See* Enemy List, ECF No. 11-3 at 6.

**Standard of Review**

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Adams Hous., LLC v. The City of Salisbury, Md.*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for

summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Here, Defendants filed a Motion titled "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and submitted additional materials in support. Therefore, Wise was on notice that the Court may treat the Motion as one for summary judgment and rule on that basis.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Discussion**

I.  **Failure to Protect**

The Eighth Amendment guarantees against cruel and unusual punishment. U.S. Const, amend. VIII. Wise's first claim, asserting that CO II Henderson was not stationed at his post and that RCI was not sufficiently staffed, raises an allegation that Defendants failed to protect him.

In order to establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "'incarcerated under conditions posing a substantial risk of serious harm;'" and second, that the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Under the first prong, an objective inquiry, "a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta*, 330 F.3d at 634 (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). Actual knowledge of a substantial risk does not alone impose liability. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

The second showing is subjective and requires proof of deliberate indifference. *See Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). Ultimately, "'the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary

judgment, plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted)).

Here, even if Wise satisfies the objective prong – that he suffered significant injury – he fails to show that, subjectively, Defendants knew that he faced serious danger and failed to respond accordingly. At the time Wise was attacked, the alleged assailants were not on his enemy list. Moreover, as Wise acknowledged during the administrative hearing, several officers were patrolling and observing the recreation hall at the time of the incident. Based on this record, Wise fails to show that Defendants were deliberately indifferent to his safety. Therefore, he cannot prevail on this claim and summary judgment in favor of Defendants is appropriate.

## II. Deliberate Indifference

Construed liberally, Wise's allegation that Defendants failed to adequately respond to his assault, amounts to an Eighth Amendment claim for denial of adequate medical care. To establish this claim, a plaintiff must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person

would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted) (emphasis removed). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Here, Wise's claim centers on CO II Henderson's failure to render first-aid treatment as well as his summary allegation that Defendants negligently failed to respond to the assault. Contrary to Wise's allegations, however, the record before the Court reflects that CO II Henderson called for medical staff immediately upon seeing blood on Wise. Indeed, Wise alleges that the stabbing occurred at approximately 1:45 p.m., and his medical chart indicates that he was admitted to the medical unit by 1:52 p.m. *See* ECF No. 1 at 2; ECF No. 11-3 at 27. Viewing this evidence in the light most favorable to Wise, the Court cannot find that Defendants were deliberately indifferent to Wise's needs. Defendants are thus entitled to summary judgment on this claim.

**Conclusion**

For the foregoing reasons, the Court:

1. **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11), which the Court construes as a motion for summary judgment;

2. **ENTERS** judgment in favor of Defendants Henderson, Warden, and Chief of Security;

3. **DIRECTS** the Clerk's office to **SEND** a copy of this Memorandum Opinion and Order to Wise and to counsel; and

4. **DIRECTS** the Clerk's office to **CLOSE** this case.

**IT IS SO ORDERED.**

                                                 s/ Lydia Kay Griggsby
                                                 LYDIA KAY GRIGGSBY
                                                 United States District Judge